**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICHARD TOLEDO, | : | |
| Petitioner, | : | Civil Action No.: 13-2457 (PGS) |
| v. | : | |
|  | : | **MEMORANDUM** |
| CHARLES WARREN, JR., | : | |
| Respondent. | : | |

**APPEARANCES**:

Richard Toledo, pro se
#603511
New Jersey State Prison
120 Hooper Avenue
Toms River, NJ 08754

William Kyle Meighan
Ocean County Assistant Prosecutor
119 Hooper Avenue
P.O. Box 2191
Toms River, NJ 08754

**SHERIDAN**, District Judge

Petitioner, Richard Toledo ("Toledo"), filed the attached petition for habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that both his trial and appellate counsel were ineffective, his sentence of life in prison without parole constitutes an impermissible *ex post facto* law as-applied to him, and the use of a legislatively mandated aggravating factor in

sentencing is violative of the separation of powers. For the reasons set forth below, the Petition is denied.

## I.   PROCEDURAL HISTORY

In February of 2008, Petitioner, Richard Toledo, pled guilty to two counts of murder and one count of kidnapping in the Superior Court of New Jersey, Ocean County. As per Petitioner's plea agreement, he was subject to up to two life sentences, one for each murder, and 30 years imprisonment for kidnapping. On March 14, 2008, the Honorable Barbara Ann Villano, J.S.C., sentenced Petitioner to life in custody with parole for one of the murders and 30 years in custody for kidnapping. Each of these sentences was subject to the No Early Release Act.[1] Petitioner was also sentenced to life in custody without the possibility of parole for the second murder.

Petitioner filed a notice of appeal on October 8, 2008 and argued only that his sentence was excessive. On May 1, 2009, the Appellate Division affirmed the sentence by short order. Petitioner then asked the Supreme Court of New Jersey for certification and was denied. Petitioner subsequently filed a *pro se* petition for Post-Conviction Relief ("PCR") with the Superior Court of New Jersey, Law Division. This petition was denied by an order dated November 10, 2010. Petitioner appealed his PCR denial to the appellate division, which affirmed the denial in a written opinion dated June 29, 2012. On January 16, 2013, the Supreme Court of New Jersey denied Mr. Toledo's petition for certification. *State v. Toledo*, No. 071270 (N.J. Jan. 16, 2013). On March 29, 2013, Petitioner filed this petition requesting a writ of habeas corpus from this Court.

---

[1]  *See* N.J.S.A. 2C:43-7.2 (requiring no less than 85% of a given sentence be served for certain enumerated crimes).

Petitioner asserts several claims in his habeas petition before this court. First, he claims that both his trial and appellate counsel were constitutionally ineffective. Petitioner claims that trial counsel was ineffective for failing to adequately inform Petitioner of the consequences attached to his plea agreement. Petitioner claims that appellate counsel was ineffective for only appealing Petitioner's sentence and not arguing on direct appeal that the plea agreement was unknowing, involuntary, or otherwise illegal. As a corollary, Petitioner claims that his sentence must be vacated because N.J.S.A. 2C:11-3c, the statute authorizing his sentence, is an impermissible *ex post facto* law as-applied to him. Lastly, Petitioner claims that the legislatively mandated aggravating factors cited in N.J.S.A. 2C:11-3c (4) are unconstitutional as violative of the separation of powers.

## II. FACTS

Petitioner Toledo pled guilty to two counts of murder, N.J.S.A. 2C:11-3(a), and one count of kidnapping, N.J.S.A. 2C:31-1. Pursuant to the plea agreement, Petitioner was exposed to 30 years in prison for kidnapping, life in prison with the possibility of parole for one murder, and life in prison without the possibility of parole for the other. Pursuant to a plea agreement, the sentencing judge sentenced Petitioner to one thirty year (30) term and two life terms, one with parole and one without, to run consecutively. *State v. Toledo*, A-4239-10T3 at 2 (App. Div. June 29, 2012). Petitioner's sentence of life without parole forms the bulk of this Petition, as he contends that his sentence constitutes an impermissible *ex post facto* law as-applied to him, that an aggravating factor on which the sentencing judge relied is unconstitutional as violative of the

3

separation of powers, and that Petitioner's trial and appellate counsel were both ineffective. The facts underlying his conviction are as follows.

Petitioner was living with a mother, Wanda Gonzalez, and her two children, Zabdiel and Karlo Gonzalez, aged 7 and 14 respectively, at 208 Middle Lane in Stafford Township, New Jersey. Transcript of Plea Hearing at 16, *State v. Toledo*, A-4239-10T3 (No. 06-09-1484) (Feb. 8, 2008). On January 19, 2006, Petitioner took a hammer and struck Karlo about the head and neck with it, killing him. Approximately 30 minutes later, Petitioner struck Zabdiel about the head and neck with the same hammer, killing him as well. In addition to being only 7 years old, Zabdiel suffered from Bell's palsy. *Id*. at 17-18. Petitioner then forced Wanda Gonzalez from her home and into a vehicle at knife point. He instructed her to drive north on the Garden State Parkway. During the trip, the car began to run out of gas and Petitioner had Ms. Gonzalez pull into a gas station in Wall Township. After Ms. Gonzalez pulled into said gas station, she jumped from the car screaming for help, sending Petitioner running for his freedom into nearby woods. *Id*. at 20.

The State of New Jersey abolished the death penalty during Petitioner's plea negotiations, removing death as an option and replacing it with life without the possibility of parole for the murder of the seven year old child.

Petitioner pled guilty on all counts and was sentenced to life without parole for the murder of Zabdiel, life in custody with the possibility of parole for the murder of Karlo, and custody for 30 years for the kidnapping of Ms. Gonzalez, all to run consecutively. All other charges were dismissed pursuant to the plea agreement.

### III. CLAIMS

Petitioner raises the following issues for federal habeas review, some of which were raised at trial, on direct appeal, to the PCR court, and on appeal from the denial of PCR:

1. Trial Counsel was ineffective for failing to fully explain the plea agreement and ensure that said plea was both knowing and voluntary.

2. Appellate Counsel was similarly ineffective for not communicating effectively with Petitioner and only arguing that Petitioner's sentence was excessive, not the legality of the plea and/or sentence.

3. Petitioner's sentence is an unconstitutional *ex post facto* law.

4. Using victim's age as a legislatively mandated aggravating factor was unconstitutional.

## IV. DISCUSSION

A.  Standards Governing Petitioner's Claims

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson,* 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett,* 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

5

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Section 2254(d)(1) therefore applies to questions of mixed law and facts.

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. *See id.* Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir.

6

2008); *see also* 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. *See Lewis v. Horn*, 581 F.3d 92, 109 (3d Cir. 2009). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *See Erickson*, *supra*, at 846 (internal quotations omitted).

B. Petitioner's Claims

1. Petitioner was Not Denied Effective Assistance of Trial Counsel.

Petitioner alleges that his counsel was ineffective at trial because counsel failed to properly confirm that Petitioner understood the terms of this plea agreement. This was not raised on direct appeal, but was raised before the PCR court. The PCR court denied by short order without reasoning, and the Appellate Divisionr eviewed. The appellate division, on review, upheld the denial because the evidence in the record was not sufficient to satisfy either prong of *Strickland*.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id*. at 688; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). To wit, Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Second, a petitioner must

7

affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

It is also worth noting that, for purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 366 (2000). In assessing an ineffective assistance of counsel claim under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard or whether there was a sufficient showing of prejudice. A state court must be granted both deference and latitude that are not in operation when the case involves direct review under the *Strickland* standard itself. *See id.; Renico v. Lett*, 559 U.S. 766, 773 (2010); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Here, Petitioner did not raise his ineffective assistance of counsel claim on direct review. Petitioner did, however, raise this claim at PCR. Though the PCR court summarily denied Petitioner's claim without reasoning, the Appellate Division issued a written opinion on appeal from PCR review. The Appellate Division held that, "[Petitioner]'s argument that trial counsel was deficient in failing to confirm that he understood the consequences of his guilty plea fails to satisfy either" of the *Strickland* prongs. *State v. Toledo*, A-4239-10T3 at 5 (App. Div. 2012). The Appellate Division noted that Petitioner "concede[d] that he was advised that his guilty plea to

8

murdering the seven-year-old child would result in a sentence of life imprisonment without the possibility of parole." *Id*.

It must be noted that Petitioner does not speak English, and thus his plea hearing was conducted through an interpreter. Judge Grasso, the trial judge at the plea hearing, asked Petitioner if "the interpreter has gone over each of the forms with [him] to make sure that [he] understood it in Spanish as well as English." Transcript of Plea Hearing at 22, *State v. Toledo*, 06-09-2484 (No. 891-08T4) (N.J. Sup. Ct., Feb. 8, 2008). Petitioner said that he did. The court also went on to clarify, in regard to signing the form acknowledging an agreement to life without parole:

> Court: And there is a form that the Prosecutor wrote up because the law that took away the death penalty is a very new law, so this is the new form, but it says that you acknowledge that, by killing Zabdiel Gonzalez, you are subject to life without parole. That form is in English, but did they go over that form with you and you signed that form?
> Petitioner: Yes.

*Id*. at 23.

In fact, Judge Grasso repeatedly checked for understanding, and Petitioner claimed he understood his plea in full no less than seven times throughout the course of the hearing.[2] I conclude that the Appellate Division properly applied Supreme Court law, therefore, the appellate court's factual determination that Petitioner understood the consequences of his guilty plea was rooted in the record. And, for this reason, the court's conclusion that Petitioner failed to

---

[2] Court: "Under [this] sentence, you can expect to serve the rest of your natural life in a State Prison institution. Do you understand that?"
Petitioner: "Yes."

*See* Transcript of Plea Hearing at 13, *State v. Toledo*, 06-09-2484 (No. 891-08T4) (N.J. Sup. Ct., Feb. 8, 2008).

9

demonstrate that his counsel's performance fell below an objective standard of reasonableness was a reasonable application of *Strickland*, and habeas relief will be denied on this ground.

2.  Appellate Counsel Was Not Ineffective

Petitioner separately claims that his appellate counsel was constitutionally deficient for challenging only the length of his sentence on appeal, not on the legality of the plea or Petitioner's understanding thereof. Petitioner first made this claim on PCR review where the claim was denied without reasoning. The appellate division, though issuing a written opinion, also denied this particular claim without articulating any reasoning. *State v. Toledo*, A-4239-10T3 (App. Div. 2012). The New Jersey Supreme Court subsequently denied certification. *State v. Toledo*, No. 071270 (N.J. Jan. 16, 2013).

In the case at bar there is no articulated reasoning on the denial of this claim by any court. However, § 2254(d) requires a habeas court to determine what arguments "could have supported" the denial and then "ask whether fairminded jurists could disagree" as to whether or not such arguments are unreasonable under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 88 (2011); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). It should also be noted that even a strong case for relief does not make a state court's contrary conclusion unreasonable. *Harrington* at 88.

The record indicates that Petitioner's direct appeal was handled using the Excessive Sentence Oral Argument procedure.[3]  On April 29, 2009, argument was heard on whether or not Petitioner's sentence was excessive, and on that same day Petitioner's sentence was affirmed by

---

[3] *See* N.J.S.A. R.2:9-11.

10

the appellate division. *See* Brief for Petitioner at 4, *State v. Toledo*, A-4239-10T3 (2012). Petitioner argues that it was a miscalculation by appellate counsel to argue only that the sentence was excessive and not the legality of Petitioner's plea agreement. *Id*. at 5.

The aforementioned standard outlined by the Supreme Court in *Strickland* allows for reasonable professional judgment to be exercised by counsel. In effect, evaluating counsel's performance in hindsight is fraught with opportunities for second-guessing. As Justice O'Connor explained in *Strickland*, "[b]ecause of the difficulties inherent in making [such an] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, *supra*, at 689 (internal quotations omitted). The decision to attack Petitioner's sentence as excessive as opposed to more formally argue that the plea was constitutionally defective falls within Justice O'Connor's "wide range" of reasonable trial strategy. Indeed, as I agree with the Appellate Division that Petitioner's plea agreement was constitutionally sound, *ante* at 16-17, choosing not to raise the argument on direct appeal was a patently reasonable strategy for counsel to undertake. *See U.S. v. Berry*, 314 Fed. Appx. 486, 487 (3d Cir. 2008) ("Notably, counsel is not ineffective for failing to raise meritless claims.").

Because Petitioner's ineffective assistance of counsel claim as to appellate counsel fails to meet the first prong of *Strickland*, there is no need to reach the second in detail. I will note, however, that because I agree that both Petitioner's plea agreement and sentence were constitutionally sound, there can be no prejudice from counsel's choosing not to argue this point on direct appeal.

11

I conclude that it was a reasonable application of Supreme Court law for the state courts to conclude that Petitioner failed to show either that trial counsel's performance fell below any objective standard of professionalism, or that any prejudice resulted from the alleged ineffectiveness of counsel. Therefore, Petitioner's claim for habeas relief on this ground is denied.

3.   <u>Petitioner's Argument that his Sentence Constitutes an Unconstitutional *Ex Post Facto* Law is Meritless.</u>

Petitioner argues that his sentence of life imprisonment without parole is, in effect, an impermissible *ex post facto* law. Petitioner urges this Court to conclude that, because the New Jersey Criminal Code was amended after he was indicted for murder and kidnapping, the portion of his sentence relating to N.J.S.A. 2C:11-3c (4) should be vacated as an impermissible *ex post facto* law.

The *ex post facto* clause, found in the U.S. Constitution, dictates, in pertinent part, that "[n]o state shall pass … any bill of attainder, ex post facto law, or law impairing the obligation of any contracts…"   U.S. CONST., art. I, § 10, cl. 1. In *Calder v. Bull*, Justice Chase famously wrote that an *ex post facto* law "necessarily requires some explanation; for, naked and without explanation, it is unintelligible, and means nothing." 3. U.S. 386, 390 (1798). Justice Chase went on to delineate impermissible *ex post facto laws* into four categories. These four enumerated categories have, without much adjustment, survived over 200 years and remain good law. Justice Chase defined these categories as thus:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every

>law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Id.*

Justice Chase's exposition was deeply rooted in common law understandings and considerations. *See Carmell v. Texas*, 529 U.S. 513, 523 (2000) (explaining that the origins of Chase's four categories were in Richard Wooddeson's 1792 writings). Justice Chase's formulation has since been either paraphrased approvingly or quoted verbatim by the U.S. Supreme Court again and again. *Accord Collins v. Youngblood*, 497 U.S. 37, 42 (1990); *Dobbert v. Florida*, 432 U.S. 282, 293 (1977); *Mallett v. North Carolina*, 181 U.S. 589, 593 (1901).

The state of the law in New Jersey at the time Petitioner was indicted was as follows: Petitioner was subject to the death penalty if the State could prove beyond a reasonable doubt that Petitioner committed knowing or purposeful homicide and met at least one of the aggravating factors enumerated in N.J.S.A. 2C:11-3c (4). One of the enumerated factors that could expose a defendant to death was a victim being under the age of 14. *Id*. at (k). If the jury determined that the applicable aggravating factor(s) outweighed any applicable mitigating factor(s), the death penalty could be imposed. If a jury did not so find, N.J.S.A. 2C:11-3b (4) provided for **mandatory** life imprisonment without parole.

This statute was amended to abolish capital punishment on December 17, 2007, nearly two months before Petitioner pled guilty but after the crime was committed and Petitioner was indicted. At this time, instead of N.J.S.A. 2C:11-3c (4) governing the standard to be used in administering the death penalty, it provided for life imprisonment without parole in all murder

13

cases "that would have been eligible for the death penalty upon the finding of one or more enumerated aggravating factors."

When the Appellate Division considered whether the statutory amendment violated the *ex post facto* clause on appeal from a denial of PCR, it reasoned that because the New Jersey Criminal Code already allowed for life imprisonment without parole at the time of Petitioner's arrest if the jury found "at least one aggravating factor, regardless of whether there were any mitigating factors or whether those mitigating factors outweighed the aggravating factor or factors," there was no constitutional violation here. *State v. Toledo*, A-4238-10T3 at 9 (App. Div. 2012). The Appellate Division subsequently dismissed Petitioner's *ex post facto* argument because the possibility of using an aggravating factor to imprison Petitioner for life, and without parole, existed in exactly the same measure after the 2007 amendment as it did before. The Appellate Division noted that, "in this case, [Petitioner] admitted he had purposely and knowingly committed the homicidal act by his own conduct and also admitted the existence of the relevant aggravating factor," and therefore "there was no *ex post facto* violation." *Id*. at 10.

The appellate division's reasoning here is neither contrary to, nor an unreasonable application of established Supreme Court precedent, *supra*. *See* 28 U.S.C. § 2254(d)(1),(2). Petitioner may have mistakenly believed that, after the 2007 amendments abolishing the death penalty, the evidentiary standard to impose a sentence of life in prison without parole eliminated the role of the jury. However, the jury-less standard challenged by Petitioner has existed since the 2000 amendments to the New Jersey Criminal Code, and all the relevant 2007 amendment did was abolish capital punishment. If the evidentiary standard required to impose life in prison without parole had been lessened after Petitioner's arrest, he might have a colorable claim under

14

Justice Chase's fourth category of impermissible *ex post facto* laws,[4] most recently reaffirmed in *Carmwell v. Texas*, 529 U.S. 513 (2000). This, however, is not the case and Petitioner's claim for habeas relief is denied.

4. <u>Petitioner's Claim that Legislatively Mandated Aggravating Factors are Unconstitutional is Unexhausted and thus Denied.</u>

Claims within a petition for a federal writ of habeas corpus must satisfy a number of requirements, including exhaustion. Exhaustion is the principle that a Petitioner must present the state court in his state with an "opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Picard v. Connor*, 404 U.S. 270, 272 (1971) (internal quotations omitted). This principle is unwavering and rooted in ideas of federalism and comity. The Supreme Court in *Picard* wrote that "[w]e emphasize that the federal claim must be fairly presented to the state courts." *Id*. at 275. Therefore, the question here is whether, "on the record and argument" before me, the New Jersey Supreme Court "had a fair opportunity to consider" Petitioner's argument that using a legislatively mandated aggravating factor in a sentencing scheme is unconstitutional. *Id.* at 276. It did not.

Before reaching this Court, Petitioner never once contended before New Jersey courts that using a legislatively mandated aggravating factor in a sentencing scheme was unconstitutional. It is also worth noting that Petitioner had the opportunity to state court to exhaust this claim, an opportunity denied by Petitioner. *See* Dkt. Entry No. 3. Because this issue

---

[4] "Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Supra* at 7.

15

was neither raised on direct appeal nor at PCR, I am unable to hold that Petitioner provided New Jersey courts with a "fair opportunity" to consider it. Thus, habeas relief will not be granted on this claim. *Accord Baldwin v. Reese*, 541 U.S. 27 (2004); *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010).

It should be noted that, though this claim is unexhausted and thus unreviewable by this Court, if the Court were to reach the merits, his claim it would still be denied. Petitioner argues that legislatively mandated aggravating factors are unconstitutional because they remove discretion from the sentencing judge and therefore violate the separation of powers. This is not so.

In N.J.S.A. 2C:11-3c (4), the New Jersey legislature enumerates a number of aggravating factors that, if proved, mandate a sentence of life in prison without the possibility of parole. As a part of his plea agreement, Petitioner admitted that he, purposely and knowingly, killed a child under the age of 14. Such conduct is one of the aggravating factors enumerated by the New Jersey legislature.[5] It is also worth noting here that the sentencing judge had discretion to reject the plea agreement if he felt it was in any way unjust or unfair. He did not.

The U.S. Supreme Court held in *Booker v. Washington* that mandatory sentencing guidelines violate the Sixth Amendment right to a jury trial, and that therefore either a jury must find beyond a reasonable doubt, or a defendant must admit to, an aggravating factor. 543 U.S. 220, 232 (2005). *Booker* then held that such sentencing guidelines promulgated by the legislature are constitutional so long as they are merely advisory and not strictly mandatory. *Id*. at 246-247. Indeed, the role of promulgating sentencing guidelines is a corollary to the role of defining

---

5  *See* N.J.S.A. 2C:11-3c (4)(k).

16

criminal offenses, a role squarely within the legislative sphere. *See Mistretta v. U.S.*, 488 U.S. 361, 373 (1988); *Jones v. U.S.*, 526, U.S. 227, 270 (1999) (referencing *U.S. v. Hudson*, 7 Cranch 32 (1812)); *see also* U.S. CONST., art. I § 1.

Under New Jersey's statute, the aggravating factors enumerated by N.J.S.A. 2C:11-3c (4) must either be found by a jury beyond a reasonable doubt or be admitted to by the defendant. Here, in Petitioner's plea agreement he admitted to aggravating factor (k), namely that one of his victims was under the age of 14, thereby obviating any *Booker*-like offense. Second, the imposition of life in prison without parole after an aggravating factor is found is not strictly mandatory, as the judge retains discretion to discard the plea agreement. This fact makes the statutory sentencing scheme at issue advisory in nature and thus constitutionally sound. Finally, the sentencing guidelines at issue here were properly promulgated by a legislative body, thereby not implicating the separation of powers.

Both because Petitioner's claim is unexhausted and because it otherwise fails on the merits, habeas relief is denied on this ground.

## V. Certificate of Appealability is Denied

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The discussion of Petitioner's claims above demonstrates that

Petitioner has not made such a showing, and this Court will not issue a certification of appealability.[6]

## VI. CONCLUSION

This Court concludes that the state court utilized and applied the correct law to Petitioner's claims.   Furthermore, the petitioner has not shown by clear and convincing evidence that the state court's determination of the facts was unreasonable. Therefore, this petition for habeas relief is denied.

April 14, 2015                                                          *s/Peter G. Sheridan*
                                                                        PETER G. SHERIDAN, U.S.D.J.

---

[6] Petitioner also moved for an evidentiary hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether the hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 465 (2007). Because Petitioner's claims have no merit, an evidentiary hearing is denied.